IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA          §

VS.                               §   NO. 4:04-CR-070-A

CHRISTOPHER L. RHODES, ET AL.     §

MEMORANDUM OPINION

By reason of the May 26, 2005, judgment of the United States Court of Appeals for the Fifth Circuit vacating this court's October 7, 2004, judgment, the court is resentencing defendant TERRELL M. CLARK ("Clark").  The explanation for the sentence of imprisonment the court is imposing on resentencing is given in this memorandum opinion.

Because of the relevance to sentencing of Clark's cooperation with the government, and the August 13, 2003, armed robbery of the Alvarado Pawn Shop, Alvarado, Texas ("Alvarado robbery"), significant attention is given in this memorandum opinion to Clark's cooperation with the government in the prosecution of others involved in the Alvarado robbery and another robbery, and the information indicating that Clark was involved in the Alvarado robbery that was available to the government before it made a cooperation agreement with Clark in May 2004.

I.

Background

Under this heading the court is providing a history of this case, as it has affected Clark, up to the point of resentencing.

In addition, the court is including a description of information the government had implicating Clark in the Alvarado robbery before Clark and the government entered into a cooperation agreement.  Some of that information is documented in the record by exhibits that were received into the record for the first time at the resentencing hearing.[1]

A.   Complaint Filed Against Clark on March 12, 2004.

On March 12, 2004, the government, acting through Melanie E. Finney, a special agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, ("S.A. Finney"), filed with Magistrate Judge Charles Bleil a criminal complaint, in the form of an affidavit of S.A. Finney, against Clark charging him with knowingly receiving and possessing specified stolen firearms on November 23, 2003, in violation of 18 U.S.C. § 922(j).  Court Ex. 1 at 1.  In her affidavit, S.A. Finney described the commission of the Alvarado robbery and of an armed robbery that occurred

---

[1]The additional exhibits in the resentencing record are:  Court Exhibits 5 (S.A. Finney's report of information obtained on November 22 and 23, 2003, with attached Haltom City police department incident report), 6 (Benbrook Police Department Criminal Investigation report of information obtained on November 22 and 23, 2003), 7 (the Alvarado robbery version of S.A. Finney's report of November 25, 2003, interview of Davis), 8 (report submitted by S.A. Finney on August 20, 2003, pertaining to the Alvarado robbery, with attachments), 9 (report submitted by S.A. Finney March 2, 2004, pertaining to the Alvarado robbery), 10 (report of S.A. Finney of the arrest of Clark and events immediately preceding it), 11 (complaint filed against Rhodes and Alves on March 24, 2004), 12 (the Alvarado robbery version of S.A. Finney's report of May 5, 2004, interview of Clark), 13 (transcript of S.A. Finney's testimony at August 9-11, 2004, trial), 14 (transcript of Clark's testimony at August 9-11, 2004, trial), 15 (S.A. Finney's report of March 1, 2004, interview of Davis), and 16 (the 183 robbery version of S.A. Finney's report of May 5, 2004, interview of Clark), and Defendant's Ex. 1 (November 1, 2004, judgment as to defendant Christopher Rhodes).

November 6, 2003, at 183 Pawn Shop, Haltom City, Texas, ("183 robbery"), during each of which firearms were stolen.  Id. at 1-2.  She stated that on November 18, 2003, Timothy Davis ("Davis"), accompanied by Clark, sold a Rolex watch that had been stolen during the 183 robbery, id. at 3; that on November 22, 2003, Daniel Major ("Major"), a friend of Clark's, and Crystal Pruitt ("Pruitt"), who was Clark's live-in girlfriend, attempted to pawn a Rolex watch that had been stolen in the 183 robbery, id.; that upon searching Major's vehicle on November 22 law enforcement found a firearm in the trunk that was stolen during the 183 robbery, id. at 3-4; that on November 23, 2003, Pruitt consented to the search of the apartment she shared with Clark, id. at 4; that during the search of the apartment officers found two firearms that had been stolen during the Alvarado robbery, three firearms that had been stolen during the 183 robbery, and items of jewelry that had been stolen in the 183 robbery, id.; and, that Pruitt told the officers who conducted the search that Clark had brought the guns and jewelry to their apartment at about the end of October or the beginning of November 2003, id.

B.    Other Information Obtained by the Government Before the
      March 12, 2004, Complaint Was Filed Implicating Clark
      in the Alvarado Robbery and the 183 Robbery.

     In addition to the information disclosed by S.A. Finney's March 12, 2004, affidavit, prior to March 12, 2004, the government had the following information implicating Clark in the Alvarado and 183 robberies:

     1.    Clark gave Davis a firearm taken in the Alvarado
           robbery:

On November 22, 2003, Davis was taken into custody as he attempted to pawn jewelry that the pawn broker thought might be stolen.  Presentence Report ("PSR") at 3-4, ¶ 13.  When Davis's vehicle was searched, the detective found a firearm that was stolen in the Alvarado robbery.  Id.; Oct. 1, 2004, Tr. at 17-18; Court Ex. 5 at 1-2, ¶ 2; PSR at 4, ¶ 14.  Davis said on November 25, 2003, that Clark gave him that firearm.  Oct. 1, 2004, Tr. at 14-15, 18; Court Ex. 3 at 2, ¶ 5; PSR at 4-5, ¶ 16.

2.  Pruitt said on November 23 that about four months earlier Clark had brought guns to their apartment (which included guns taken in the Alvarado robbery):

Pruitt was questioned on November 23, 2003, by the Benbrook police department after she, in the company of Major, attempted on November 22, 2003, to pawn the Rolex watch that had been stolen in the 183 robbery.  Court Ex. 6 at 2-6.  She acknowledged to the questioning detective that there were guns in the apartment she shared with Clark.  Id. at 4.  She said that Clark brought the guns there about four months earlier.  Id.  She then consented to the November 23, 2003, search (mentioned in the March 12, 2004, complaint against Clark) of the apartment, when two guns taken in the Alvarado robbery and three taken in the 183 robbery were found.  Id.; Court Ex. 5 at 2, ¶ 4; PSR at 4, ¶ 15.

3.  In November 2003 S.A. Finney realized that there was a connection between the two robberies and that the robberies had common participants:

Initially S.A. Finney was assigned to investigate the 183 robbery, but once firearms from that robbery and the Alvarado

4

robbery were found in Clark's apartment on November 23, 2003, she began investigating the Alvarado robbery as well.  Oct. 1, 2004, Tr. at 16.  She realized at that time that there was a connection between the two robberies and that at least some of the same people participated in commission of the robberies.  Id.

    4.   S.A. Finney's November 25, 2003, interview of Davis:

On November 25, 2003, S.A. Finney interviewed Davis regarding his knowledge of both robberies.  Court Ex. 3.  Davis told her of a robbery Clark and one of Clark's acquaintances, Christopher Rhodes ("Rhodes") (to whom Davis referred as "K"), planned to commit two or three months prior to the interview.  Id. at 1-2.  In addition, he told her of having been at Clark's apartment three or four weeks prior to the interview when Clark, Rhodes, and Shango Alves ("Alves") (to whom Davis referred as "Shane Gold") left the apartment all dressed in dark clothing and later returned with firearms, jewelry, and cash from a robbery.  Id. at 2.  S.A. Finney completed two versions of her report of her November 25 interview with Davis, one she identified as pertaining to the 183 robbery, Court Ex. 3 at 1, and the other she identified as pertaining to the Alvarado robbery, Court Ex. 7 at 1.

    5.   Victim of Alvarado robbery selects Clark's photograph in a photo line-up:

The descriptions given by the victims of the Alvarado robbery of the two persons who committed that robbery included a description that generally matched Clark.  Oct. 1, 2004, Tr. at

17; Court Ex. 1 at 2.  On February 19, 2004, S.A. Finney showed a
victim of the Alvarado robbery a photo line-up containing a
photograph of Clark.  Oct. 1, 2004, Tr. at 13; Court Ex. 9 at 2,
¶ 4.  S.A. Finney included Clark's photograph in the photo line-
up because, based on what she had learned by then, she felt that
Clark was connected to the Alvarado robbery.  Oct. 1, 2004, Tr.
at 23.  The victim was positive that four of the six persons
shown in the line-up were not involved in the robbery.  Id. at
13; Court Ex. 9 at 2, ¶ 4.  He said that two persons shown in the
line-up, including Clark, looked familiar to him, but he was not
one hundred percent sure that either was involved in the robbery.
Oct. 1, 2004, Tr. at 13; Court Ex. 9 at 2, ¶ 4.

     6.    <u>Reasons given by S.A. Finney why in November 2003
she thought Clark was connected with the Alvarado
robbery</u>:

In November 2003 S.A. Finney thought that Clark was
connected with the Alvarado robbery based on the following facts:

> Yes, sir, that was the evidence:  the photo lineup, the
> tentative identification in that; the firearms found at
> his house; and then Timothy Davis - - also, Timothy
> Davis' association with Terrell Clark.  Timothy Davis
> on March 1st, in that interview - - Timothy Davis was
> arrested with a firearm from the Alvarado Pawn Shop,
> and in my initial interview with Timothy Davis he told
> me that that firearm was given to him by Terrell Clark.
> So that led me to believe that there was also more
> connection to Terrell Clark in the Alvarado robbery.

Oct. 1, 2004, Tr. at 14.

C.   <u>Clark's Arrest and Detention</u>.

    Clark was arrested March 23, 2004, pursuant to the
previously mentioned March 12, 2004, criminal complaint.  Court
Ex. 10 at 1, ¶ 2; PSR at 1, ¶ 2.  A detention hearing was held

March 30, 2004, following which a detention order was signed by

Magistrate Judge Bleil.  By that time, S.A. Finney had reached

the following conclusions relative to participants in the

Alvarado robbery:

> At the time of the detention hearing, I -- based on --
> based on the evidence that we had at that point, guns
> and jewelry -- or guns from both locations, kind of
> being mingled among everybody, jewelry.  I knew that
> two people had committed the robbery in Alvarado and
> that it was very similar to the robbery committed at
> 183 Pawn Shop.  I had at that point had identified
> Terrell Clark, Chris, and Shango as committing the 183
> robbery.  It was my belief at that point that two of
> them had also committed the Alvarado robbery.  I did
> not know specifically who had committed the Alvarado
> robbery.

Tr. of Aug. 9-11, 2004, trial, Vol. II, at 602-03; Court Ex. 13

at 602-03.

D.   S.A. Finney's March 23, 2004, Interview of Clark.

On March 23, 2004, S.A. Finney conducted an interview of

Clark following his arrest.  Court Ex. 2.  Her report of that

interview said that the interview was "regarding [Clark's]

involvement in the armed robbery of 183 Pawn Shop, Haltom City,

Texas."  Id. at 1.  Clark gave S.A. Finney detailed information

concerning commission of the 183 robbery.  He related that he,

Rhodes, and Alves committed the robbery, using a vehicle Major

loaned to them for that purpose.  Id. at 2.  No mention of the

Alvarado robbery is made in S.A. Finney's report of this

interview.

7

E.   The Complaint Filed Against Rhodes and Alves on March 24, 2004.

On March 24, 2004, the government, acting through S.A. Finney, filed with Magistrate Judge Bleil a criminal complaint against Rhodes and Alves, charging them with knowingly stealing firearms from the 183 Pawn Shop on November 6, 2003.  Court Ex. 11.

F.   The Original Indictment.

On April 14, 2004, the government caused the grand jury to return a two-count indictment against Clark, Rhodes, and Alves. Count One charged the three defendants with stealing nineteen firearms during the 183 robbery, and Count Two charged them with using and carrying a firearm during the commission of that robbery.

G.   S.A. Finney's Interview of Clark on May 5, 2004.

On May 5, 2004, S.A. Finney interviewed Clark in the presence of his attorney.  Court Ex. 12.  Before she conducted this interview, S.A. Finney believed that Clark was involved in the Alvarado robbery.  She gave the following explanation during her October 1, 2004, testimony:

    Q.  . . . Prior to that interview on May 5th, did you
    feel like you had sufficient evidence to charge [Clark]
    with that Alvarado robbery?

    A.   Not to charge him, no, sir.

    Q.   Did you --

            THE COURT:  Why do you state it that way,
    "not to charge him"?

            THE WITNESS:  I believed at that point that
    he was involved in the Alvarado robbery.

8

            THE COURT:  You thought he was a participant in
    it?

            THE WITNESS:  I did not know.  I knew the three
    participants in the 183 Pawn Shop robbery.  I knew that
    there were only two participants in the Alvarado robbery.  I
    was not 100 percent sure which of the three that committed
    the 183 Pawn Shop robbery were the two involved in the
    Alvarado robbery.  There was more physical evidence that led
    to me believing that Mr. Clark was involved in the Alvarado
    robbery, because some of the firearms had been recovered at
    his house and he had links to the Alvarado robbery like
    that, that the other defendants did not.  But I did not feel
    we had enough evidence to charge him with that.

Oct. 1, 2004, Tr. at 11-12.  Through questioning of S.A. Finney

at the September 1, 2005, session of the resentencing hearing, it

was developed that she did not trace anything taken in the

Alvarado robbery to any suspect other than Clark.

    S.A. Finney's report of the May 5, 2004, interview says that

the interview was "regarding [Clark's] knowledge of the armed

robberies at 183 Pawn Shop and Alvarado Pawn Shop."  Court Ex. 12

at 1.  The report states that before Clark answered any questions

his attorney explained to him the terms of the cooperation

agreement.  Id.  Details of the commission by Clark and Rhodes of

the Alvarado robbery are related in the report.  S.A. Finney

prepared two versions of the report of her May 5, 2004, interview

with Clark, one that gives the Alvarado robbery as the Title of

Investigation, Court Ex. 12, and the other, a lengthier version,

which gives the 183 robbery as the Title of Investigation, Court

Ex. 16.

H.   <u>The Cooperation Agreement</u>.

Clark and the government entered into a cooperation agreement dated May 7, 2004, pursuant to which Clark agreed to make full disclosure of the knowledge he had regarding federal criminal violations committed by himself and others, with the understanding that his disclosures would be subject to USSG § 1B1.8.  Court Ex. A.  The agreement specifically provides, as does § 1B1.8, that it does not restrict the use of information disclosed during an interview pursuant to the agreement (a) if the information was known to the government prior to entering into the cooperation agreement or (b) if the information is used by the court in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under USSG § 5K1.1.  <u>Id.</u> at second page.  The cooperation agreement appears to have been signed by the attorney for the government on May 7, 2004, and by defendant and his attorney on June 10, 2004.  Court Ex. A at third page.

I.   <u>Clark's Plea of Guilty</u>.

On June 10, 2004, Clark entered a plea of guilty pursuant to a plea agreement reached between him and the government on June 9, 2004, and a factual résumé signed by him and the government on that date.  The plea of guilty was to both counts of the April 14, 2004, indictment.  In the stipulated facts section of the factual résumé, Clark gave details concerning his participation, along with Rhodes and Alves, in the 183 robbery, and it implicated Major as the party who provided the vehicle used in

10

the robbery.  The plea agreement contained a commitment by the
government to file a motion for downward departure from the
applicable sentencing guideline range pursuant to USSG § 5K1.1
if, in its sole discretion, the government determined that Clark
had provided substantial assistance in the investigation or
prosecution of others.

J.    The Superseding Indictment.

    On June 16, 2004, the government caused the grand jury to
return a six-count superseding indictment against Rhodes, Alves,
and Major.  Count One charged Rhodes with conspiracy to use and
carry a firearm in a crime of violence, alleging that Rhodes and
Clark conspired to commit the Alvarado robbery and that in
furtherance of the conspiracy they committed the robbery.  Count
Two charged Rhodes with theft of firearms from a licensed firearm
dealer in connection with the Alvarado robbery.  Count Three
charged Rhodes with using and carrying a firearm during and in
relation to the Alvarado robbery.  Count Four charged Rhodes,
Alves, and Major with conspiring with each other and Clark to use
and carry a firearm in a crime of violence, alleging that they
conspired to commit the 183 robbery, and that Rhodes, Alves, and
Clark actually committed the robbery using a vehicle supplied by
Major.  Count Five charged Rhodes, Alves, and Major with theft of
firearms during commission of the 183 robbery.  Count Six charged
Rhodes, Alves, and Major with using and carrying a firearm in the
commission of the 183 robbery.

K.    The Trial of Rhodes, Alves, and Major on the
      Superseding Indictment.

Rhodes, Alves, and Major went to trial on August 9, 2004, on the charges against them in the superseding indictment.  Clark was a prosecution witness.  He related in some detail how he and Rhodes made the decision to commit the Alvarado robbery and described in detail the commission of the robbery by the two of them.  Tr. of Aug. 9-11, 2004, trial, Vol. I at 124-46; Court Ex. 14 at 124-46.  Similarly, he gave a detailed description of the planning of the 183 robbery, and the commission of the robbery by him, Rhodes, and Alves by use of an automobile provided by Major. Tr. of Aug. 9-11, 2004, trial, Vol. I at 150-79; Court Ex. 14 at 150-79.

On August 11, 2004, the jury returned its verdict finding Rhodes not guilty as to the Alvarado robbery offenses charged by Counts One, Two, and Three, finding Rhodes and Alves guilty of the 183 robbery offenses charged by Counts Four, Five, and Six, and finding Major guilty of the 183 robbery offense charged by Count Four but not guilty as to the 183 robbery offenses charged by Counts Five and Six.

L.    The Presentence Report, Objections, and Addendum.

Following Clark's plea of guilty, a sentencing date of October 1, 2004, was fixed.  The presentence report was prepared and distributed August 6, 2004.  The probation officer concluded that the criminal history category was III, that the total offense level as to Count One was 25, that the guideline range of imprisonment as to Count One was 70 to 87 months, and that the guideline range of imprisonment as to Count Two was 84 months

12

(the statutory minimum), to be served consecutively to the
sentence imposed as to Count One.  PSR at 15.  In arriving at the
total offense level of 25, the probation officer took into
account firearms stolen in the Alvarado robbery, as well as those
stolen in the 183 robbery, in order to assign a six-level
increase in the offense level under the authority of USSG
§ 2K2.1(b)(1)(C).  <u>Id.</u> at 9.

On August 19, 2004, the government filed objections to the
presentence report, objecting to the use of the firearms taken in
the Alvarado robbery to increase the offense level.  Basically,
the government took the position that the cooperation agreement
entered into between the government and Clark on May 7, 2004,
prevented information concerning the guns taken in the Alvarado
robbery from being considered in the guideline calculations.  On
August 23, 2004, Clark, through his counsel, filed objections to
the presentence report, one of which parroted the government's
objection.

By addendum prepared September 7, 2004, the probation
officer gave the following response to those objections:

> **RESPONSE:**  Pursuant to USSG § 1B1.8(b)(1), the
> provisions of subsection (a) shall not be applied to
> restrict the use of information "known to the
> government prior to entering into the cooperation
> agreement."  Prior to entering into the agreement,
> Special Agent Finney knew the following information:
> (1) The robbery of the Alvarado Pawn Shop was committed
> on August 13, 2003, by two black males using the same
> modus operandi that was used in the robbery of the 183
> Pawn Shop on November 6, 2003.  (2) On October 22,
> 2003, agents interviewed Lowdesa Sherri Abbery,
> subsequent to her arrest, regarding her possession of a
> Hi-Point, Model C-9, 9mm pistol, Serial No. P159168,
> which was reported stolen during the Alvarado Pawn Shop

13

robbery.  (3) On November 18, 2003, Timothy Davis sold
a Rolex watch (reported stolen from 183 Pawn Shop) and
he was accompanied by Terrell Clark (defendant), who
purchased three videotapes.  Both Davis and Clark had
provided personal identification to the pawn shop
clerk.  At this point, Agent Finney believed Davis and
Clark were in some way connected to the robbery of 183
Pawn Shop.  (4) On November 20, 2003, Davis was
arrested at First Pawn Shop in Fort Worth attempting to
pawn or sell some jewelry that the pawnbroker thought
was stolen.  Furthermore, police officers found, in
Davis' vehicle, a firearm, a Bersa .380, Serial No.
53595, reported stolen from the Alvarado Pawn Shop when
Davis was arrested.  (5) On November 23, 2003, police
officers searched Clark's apartment and seized the
following items: a Bryco .25 caliber pistol, Serial No.
1572341, reported stolen from Alvarado Pawn Shop; a
black semi-automatic Hi-Point model 995 9mm rifle,
Serial No. A78067, reported stolen from 183 Pawn Shop;
a Kimber .45 semi-automatic, Serial No. K035245,
reported stolen from 183 Pawn Shop; a Raven .25
automatic, Serial No. 3125155; a Llama Minima .40,
Serial No. 71-04-11877-02, reported stolen from 183
Pawn Shop; a Llama Minima .45, Serial No. 71-04-02606-
03, reported stolen from 183 Pawn Shop; numerous pieces
of jewelry; a black duffle bag containing three
baseball caps, one gray toboggan hat, five brown cotton
work gloves, one blue cotton item which could be used
to cover a face from the eyes down, and one black do-
rag; and a Texas license plate bearing the number D27-
PHK.  At this time, Special Agent Finney knew, by a
preponderance of the evidence, that Clark was involved
in the Alvarado Pawn Shop robbery.  (6) On November 25,
2003, and March 1, 2004, Special Agents Finney and
Benavides interviewed Davis, and he reported that
Terrell Clark had committed a robbery "approximately
two or three months ago" which Special Agent Finney
knew was the Alvarado Pawn Shop robbery.  Davis told
agents that the Rolex he sold on October [sic] 22,
2003, was given to him by Clark to be sold on behalf of
Clark, and furthermore, the firearm (Bersa .380 which
was stolen in the Alvarado Pawn Shop robbery) was also
given to him by Clark.  At this point, Agent Finney was
convinced Clark was involved in both the Alvarado and
the 183 Pawn Shop robberies.  (7) On February 19, 2004,
C. A. Ezell, an employee at Alvarado Pawn Shop, was
shown a photo line-up containing six photographs, one
of which was a photograph of Clark.  Mr. Ezell was
positive that four of the six individuals depicted in
the photographs were not involved in the robbery; he
identified Clark as someone who looked familiar but was
not 100 percent sure.  This identification, although

not 100 percent, confirmed to Special Agent Finney her belief that Clark was one of the two males who had committed the Alvarado Pawn Shop robbery, especially since he possessed one of the stolen firearms.  (8) On March 23, 2004, Special Agent Finney prepared a Criminal Complaint against Clark in which she alleged the Alvarado Pawn Shop robbery which is attached to this Addendum.  Clark was subsequently arrested by agents, and talked voluntarily about his involvement in the 183 Pawn Shop Robbery.  No information was obtained from him, post arrest, about the Alvarado Pawn Shop robbery.

On May 5, 2004, pursuant to a cooperation agreement, Special Agent Finney interviewed the defendant, Terrell Clark, regarding his knowledge of the armed robberies at 183 Pawn Shop and Alvarado Pawn Shop.  By a preponderance of the evidence standard, Special Agent Finney knew the defendant committed the Alvarado Pawn Shop robbery when she interviewed him on May 5, 2004. During the interview, Clark admitted that he and Rhodes committed two armed robberies together, 183 Pawn Shop and Alvarado Pawn Shop.  Therefore, the defendant only confirmed what Special Agent Finney knew, by a preponderance of the evidence standard, when she agreed to interview him.

Sept. 7, 2004, Addendum to the Presentence Report, Terrell M. Clark, at 2-3.  On September 14, 2004, the government filed objections to the addendum, taking issue with several of the points made by the probation officer.  The defendant objected to the addendum by re-urging his original objections to the presentence report.

M.   The Motion for Downward Departure.

On August 19, 2004, the government filed a motion asking the court to downwardly depart pursuant to USSG § 5K1.1 from the sentencing guideline found applicable to Clark for the reason that he had provided substantial assistance to the government in the prosecution of others by providing the government information

implicating Rhodes, Alves, and Major in the 183 robbery and giving trial testimony against Rhodes, Alves, and Major.

N.    The Court's Tentative Conclusion Order.

On September 28, 2004, the court signed an order advising the parties as follows:

> Upon further review of the sentencing material pertaining to defendant TERRELL M. CLARK ("Clark"), the court tentatively has concluded that, disregarding information the government obtained from Clark on or after May 5, 2004, the preponderance of the evidence establishes that Clark participated in the armed robbery of the Alvarado Pawn Shop in August 2003 and that he used and carried a firearm in the commission of that robbery. For that reason, the court tentatively has concluded that there should be an upward departure from the top of the guideline range specified in the presentence report to take into account Clark's conduct in relation to the robbery of the Alvarado Pawn Shop.

> Had Clark been charged with, and convicted of, his true offense conduct, his guideline imprisonment range for commission of the robberies of the Alvarado Pawn Shop and the 183 Pawn Shop would be 78 to 97 months, and he would be subject to a minimum term of imprisonment of 84 months, to be served consecutive to any other term of imprisonment imposed, for one of his firearm offenses, and would be subject to a minimum term of imprisonment of 300 months, to be served consecutive to any other term of imprisonment imposed, as to his second firearm offense, which would result in an imprisonment guideline range of 462 months to 481 months. Of course, the court will take into account the government's motion for downward departure in determining the sentence to be imposed even if the court concludes that there otherwise should be an upward departure.

> The court is calling the foregoing tentative conclusions to the attention of the parties so that they can be taken into account at the sentencing hearing.

Sept. 28, 2004, Order at 1-2.

O.    The First Sentencing Hearing.

The first sentencing hearing was conducted in two sessions, the first on October 1, 2004, and the second on October 6, 2004. Testimony was taken from S.A. Finney, and four exhibits were received, the March 12, 2004, complaint against Clark (Court Ex. 1), S.A. Finney's report of her March 23, 2004, interview of Clark (Court Ex. 2), S.A. Finney's report of her November 25, 2003, interview of Davis (Court Ex. 3), and alternative sentencing guideline calculations (Court Ex. 4).

The alternative guideline calculations disclosed that, if Clark's true offense conduct (the two pawn shop robberies and using, carrying, and brandishing a firearm in relation to each of them) were to be taken into account in the sentencing process, he would be faced with an imprisonment range of 454 months to 471 months. Court Ex. 4 at 2. In contrast, if he were to be sentenced within the guideline range applicable only to the offenses for which he pleaded guilty, his imprisonment range would be 57 to 71 months as to Count One and 84 months as to Count Two, to run consecutively to Count One, for a total imprisonment range of 141 to 155 months.[2]

The court found that Clark had provided substantial assistance to the government in the prosecution of other persons, and that a downward departure would be appropriate if the counts of conviction adequately addressed his criminal conduct. Oct. 1,

---

[2]The range of 57 to 71 months as to Count One results from calculations that disregard the guns taken in the Alvarado robbery. If the guns taken in the Alvarado robbery are included, the guideline range for Count One would be 70 to 87 months. PSR at 8-9, ¶¶ 37-44, & 15, ¶ 73.

17

2004, Tr. at 26.  However, the court concluded that the counts of conviction greatly failed to recognize the scope of defendant's criminal conduct, so that a downward departure would be inappropriate.  Id. at 26-27.  Moreover, the court found from a preponderance of the evidence, based on the information that was available to the government before Clark and the government entered into the cooperation agreement, that Clark was a participant in the Alvarado robbery.  Id. at 25-26; Oct. 6, 2004, Tr. at 8-10.

The court concluded that Clark should be sentenced to a term of imprisonment of 87 months as to Count One and 153 months as to Count Two, to run consecutively to the term of imprisonment imposed as to Count One, for a total term of imprisonment of 240 months.  Oct. 6, 2004, Tr. at 15.  The transcript of the October 6, 2004, session of the sentencing hearing contains a detailed statement by the court of the factors the court considered, and the steps the court took, in reaching the sentencing decision. On October 7, 2004, the court signed a judgment imposing Clark's sentence, including the total term of imprisonment of 240 months.

P.   Clark Appealed, and the Fifth Circuit Vacated and Remanded.

On May 26, 2005, the United States Court of Appeals for the Fifth Circuit rendered a judgment ordering and adjudging "that the judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court." United States v. Clark, No. 04-11229, judgment (5th Cir. May 26, 2005).  The

18

opinion to which the Fifth Circuit's judgment referred, which shows to be a per curiam opinion by a panel consisting of Circuit Judges Emilio M. Garza, Harold R. DeMoss, Jr., and Edith Brown Clement, reads in its entirety as follows:

> IT IS ORDERED that the Appellee's unopposed motion to vacate the sentence is granted.
>
> IT IS FURTHER ORDERED that the Appellee's unopposed motion to remand the case for resentencing is granted.
>
> IT IS FURTHER ORDERED that the Appellee's unopposed alternative motion to extend time to file the Appellee's brief fourteen (14) days from the Court's denial of the Appellee's motion to vacate and remand is denied as moot.

Id., slip op. at 1-2.  The "unopposed motion" to which the opinion refers was filed by the government with the Fifth Circuit on May 11, 2005.  The factual basis, and ground of, the motion were, as stated in their entirety, as follows:

> The United States moves to vacate Clark's sentence and to remand for a resentencing.  This motion is based on the government's concession that the error Clark complains of in ground of error one in his initial brief did occur.  The government believes, as it did at the time that it filed its written objections to the Addendum to the PSR, that the evidence available before Clark's protected interview on May 5, 2004, "did not rise to the level of the preponderance [of the evidence] standard that Clark committed that Alvarado Pawn Shop robbery."  (Gov't. Objections to Add to PSR at 3-4.)  Because the district court used that robbery to calculate Clark's offense level, the government concedes that there was error during Clark's sentencing proceeding, and that the case should be remanded for resentencing.

Gov't. Mot. to Vacate Sentence and Remand (in 04-11229) at 1-2 (footnote omitted).  Presumably the "ground of error one" the government mentioned in its motion has reference to the first

statement of issues presented for review by Clark in his brief in the Fifth Circuit, which reads as follows:

> Did the district court err by considering as a sentencing factor and basing an upward departure on an additional robbery that Clark admitted participating in during interviews that were protected by a U.S.S.G. §1B1.8 cooperation agreement when there was not sufficient evidence to show Clark committed the additional robbery aside from his statements given pursuant to U.S.S.G. §1B1.8?

Br. of Appellant (No. 04-11229) at 2.

While the opinion of the Fifth Circuit does not have the clarity some might think desirable, the court is assuming that, in effect, the Fifth Circuit ruled that the record before the court at Clark's original sentencing would not support a finding based on information the government had before the government and Clark made their cooperation agreement that Clark probably committed the Alvarado robbery.  See Every v. Blackburn, 781 F.2d 1138, 1140-41 (5th Cir. 1986); Cachoian v. United States, 452 F.2d 548, 550 (5th Cir. 1971).

The mandate of the Fifth Circuit issued June 17, 2005.

II.

The Resentencing

A.   The Expanded Record on Resentencing is Being Considered.

The resentencing hearing was conducted in two sessions, the first on September 1, 2005, during which the sentencing record was expanded, and the second on September 8, 2005.  The court believes appropriate to consider the expanded record existing at the time of resentencing, and to sentence Clark consistent with the findings and conclusions the court feels are proper to be

made and reached under that record.   See United States v. Lee,
358 F.3d 315, 322-23 (5th Cir. 2004).   See also Monge v.
California, 524 U.S. 721, 730 (1998) (noting the general rule
that double jeopardy principles have no application in the
sentencing context); Williams v. New York, 337 U.S. 241, 247
(1949) (recognizing that "[h]ighly relevant--if not essential--to
[a sentencing judge's] selection of an appropriate sentence is
the possession of the fullest information possible concerning the
defendant's life and characteristics" and "concepts
individualizing punishment have made it all the more necessary
that a sentencing judge not be denied an opportunity to obtain
pertinent information by a requirement of rigid adherence to the
restrictive rules of evidence properly applicable to a trial").
Of course, in the resentencing the court, as it must, has taken
into account the decisions handed down since the original
sentencing by the Supreme Court in United States v. Booker, 543
U.S.    , 125 S. Ct. 738 (2005), and the Fifth Circuit in United
States v. Mares, 402 F.3d 511 (5th Cir. 2005).

B.   A Downward Departure is Inappropriate.

        The court persists in, and reiterates, its earlier findings
and conclusions relative to guideline calculations and the
substantial assistance provided by Clark to the government.
Supra at 18-19; Oct. 6, 2004, Tr. at 3-6.  While the court finds
that Clark provided substantial assistance to the government,
because the imprisonment range (141 to 155 months or 154 to 171
months, depending on whether the guns taken in the Alvarado

robbery are included in the calculations) existing by virtue of Clark's offenses of conviction is so much lower than the imprisonment range (454 to 471 months) that would exist if he were to be held accountable for his true offense conduct, the court concludes that it should not downwardly depart.  The court would reach that conclusion under the authority of USSG § 1B1.8(b)(5) without regard to the nature of the government's knowledge of Clark's involvement in the Alvarado robbery before he and the government made their cooperation agreement.[3]

C.   The Expanded Record Supports a Finding Based on Information the Government had Before May 2004 that Clark Probably Participated in the Alvarado Robbery.

The cooperation agreement between Clark and the government specifically provided that its terms do not restrict the use of information disclosed during an interview pursuant to the agreement if the information was known to the government prior to entering into the agreement.[4]  Thus, there must be an evaluation,

---

[3]U.S. Sentencing Guidelines Manual § 1B1.8(b)(5) provides that the court is not bound by a cooperation agreement in the determination of "whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities)."

[4]U.S. Sentencing Guidelines Manual § 1B1.8 provides in pertinent part that:

    (a)   Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

                                                (continued...)

under the now-existing record, of the information known to the
government about Clark's involvement in the Alvarado robbery
before the cooperation agreement was made.  The court has
concluded from the expanded record that the government had ample
information before the cooperation agreement was made from which
it could infer that Clark probably was one of the two
participants in the Alvarado robbery.

But more to the point, the court can, and does, reasonably
infer from the pre-cooperation agreement information available to
the government that Clark probably was a participant in the
Alvarado robbery.  The process the court has employed in
evaluating the weight of the evidence is the same as what the
court invariably instructs the jury to do in a criminal case.[5]

---

[4](...continued)
(b)   The provisions of subsection (a) shall not be applied
      to restrict the use of information:

      (1)   known to the government prior to entering into
            the cooperation agreement[.]

[5]The following is the text of an instruction the court
ordinarily gives to the jury in a criminal case:

        While you should consider only the evidence, you are
    permitted to draw such reasonable inferences from the
    testimony and exhibits as you feel are justified in the
    light of common experience.  In other words, you may make
    deductions and reach conclusions that reason and common
    sense lead you to draw from the facts which have been
    established by the evidence.

        . . . .

        In considering the evidence you may make deductions
    and reach conclusions which reason and common sense lead
    you to make; and you should not be concerned about whether
    the evidence is direct or circumstantial.  "Direct
                                             (continued...)

In making its finding, the court has drawn such reasonable
inferences from the evidence as are justified in the light of
common experience, and has made those deductions, and reached
those conclusions, that reason and common sense lead the court to
make and draw from the facts that have been established by the
now-existing evidentiary record.

Summed up, those established facts include the following:

On November 25, 2003, Davis told S.A. Finney of a discussion
he had with Rhodes at approximately the point in time when the
Alvarado robbery occurred about a robbery Clark and Rhodes were
planning to commit, as well as relating to her that Clark,
Rhodes, and Alves committed a robbery at approximately the point
in time when the 183 robbery was committed.  Pruitt told the
Benbrook police on November 23, 2003, about Clark bringing guns
to their apartment at a point in time that generally matched the
time of the occurrence of the Alvarado robbery.  In another
interview, Pruitt said that Clark brought guns and jewelry to
their apartment at a point in time generally matching the
occurrence of the 183 robbery.  On November 23, 2003, guns taken
in the Alvarado robbery as well as items taken in the 183 robbery

---

[5](...continued)
evidence" is the testimony of one who asserts actual
knowledge of a fact, such as an eye witness.
"Circumstantial evidence" is proof of a chain of events
and circumstances indicating that something is or is not a
fact.  The law makes no distinction between the weight you
may give to either direct or circumstantial evidence.

Fifth Circuit Pattern Jury Instructions: Criminal, § 1.07 at 16 (West
2001).

were found in the apartment Pruitt shared with Clark.  Pruitt
told the investigators at that time that those items were brought
there by Clark.  Earlier, Clark gave Davis a firearm that had
been taken in the Alvarado robbery.  Clark generally matched the
description given by the victims of the Alvarado robbery of one
of the robbers.  One of the victims selected Clark's photograph
from a photo line-up as being a person familiar to him, though he
was not one hundred percent sure that he was involved in the
robbery.  The methods employed by the robbers in accomplishing
the two robberies were very similar.  Before May 2004, S.A.
Finney had narrowed down the Alvarado robbery suspects to Clark,
Rhodes, and Alves.  Clark was the only one to whom items taken in
the Alvarado robbery had been traced.

When the court considers the pre-May 2004 evidence, the
court is persuaded that it is more likely that Clark was a
participant in the Alvarado robbery than that he was not.  Thus,
the court finds from a preponderance of the evidence known to the
government before it made the cooperation agreement that Clark
was a participant in the Alvarado robbery.[6]  Specifically, the
court finds from a preponderance of such evidence, all of which
has sufficient indicia of reliability to support its probable
accuracy, that Clark committed, in reference to the Alvarado
robbery, the offense of theft of firearms from a licensed firearm

---

[6]"Preponderance of the evidence" generally is defined as "the
greater weight and degree of credible evidence" and "the amount of
evidence that persuades [the fact-finder] that a claim is more likely
so than not so."  Fifth Circuit Pattern Jury Instructions: Civil,
§ 3.1 at 29 (West 2005).

dealer, in violation of 18 U.S.C. § 924(m), and the offense of

using, carrying, and brandishing a firearm during and in relation

to a crime of violence, in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii).[7]

D.   The Court Discounts S.A. Finney's Minimization of the
     Government's Pre-May 2004 Knowledge.

While the court has given due consideration to the testimony

of S.A. Finney that, although she believed before May 2004 that

Clark was involved in the Alvarado robbery, she did not feel that

she had enough evidence to charge him with the robbery, supra at

8-9, the court is obligated to make its own evaluation as to the

weight and effect of the pre-cooperation agreement information.

S.A. Finney knew before May 2004 that Clark, Rhodes, and

Alves committed the 183 robbery.  The court concurs with S.A.

Finney's assessment that the information the government had pre-

May 2004 was sufficient to lead it to believe that two of the

three persons who committed the 183 robbery also committed the

Alvarado robbery.  Supra at 7-8, 9-10.  An analysis of the

information then known to the government leads to a finding that

more likely than not Clark was one of those two.  He is the only

one of the three suspects to whom guns taken in both robberies

could be traced, id. at 10; he is one of the three suspects a

witness (Davis) said was planning with another of the three the

commission of a robbery at about the time of the occurrence of

---

[7]The record establishes that the Alvarado Pawn Shop was a
licensed firearms dealer, Court Ex. 1 at 1, and that the two robbers
used, carried, and brandished firearms, id.; Court Ex. 8 at sixth
page.

the Alvarado robbery, id. at 5; and, a victim of the Alvarado
robbery tentatively identified him as one of the robbers, id. at
6-7.

The court has not overlooked the testimony of S.A. Finney
that she did not believe Davis had reference to the August 13,
2003, Alvarado robbery when he told her on November 25, 2003,
that Rhodes approached him two or three months earlier about
participating in a robbery that Clark and Rhodes were going to
commit.  See Oct. 1, 2004, Tr. at 19, 22-23.[8]  At the original
sentencing, the court deferred to S.A. Finney's explanations that
she thought the events Davis described as having occurred two or
three months before November 25 related to the same robbery he
described during the same interview as having occurred three or
four weeks before that date--the 183 robbery that occurred
November 6, 2003.  The court did not rely on the contents of
Davis's statement in evaluating whether the information possessed
by the government before May 2004 would support a finding that
Clark probably participated in the Alvarado robbery.[9]  Even now,

_____

    [8]S.A. Finney reiterated her testimony to this effect at the
resentencing hearing.  Tr. (draft) of Sept. 1, 2005, resentencing
hearing at 26-28.

    [9]At the original sentencing hearing, the court made the
following comments relative to Davis's November 25, 2003, statement:

        While the Court is not relying on the contents of the
    statement given by Timothy Davis to Agent Finney on
    November 25, 2003, which is marked Court Exhibit 3, the
    Court notes with interest that Agent Finney's summary of
    her interview with Timothy Davis discloses that Davis,
    Clark, and Christopher Rhodes discussed performance of a
    robbery two or three months before the November 25, 2003,
                                              (continued...)

if the court were to disregard Davis's statement in reference to the events occurring two or three months earlier, the court nevertheless would find, based on the expanded record, that the other information the government had pre-May 2004 establishes that Clark probably was a participant in the Alvarado robbery. Moreover, after a careful study of the expanded record, the court has now concluded that S.A. Finney's testimony that Davis was not referring to the Alvarado robbery is not persuasive.

The "Synopsis" part of S.A. Finney's report of the November 25, 2003, interview of Davis says that Davis was interviewed "regarding his knowledge of the armed robberies that occurred at 183 Pawn Shop, Haltom City, Texas and the Alvarado Pawn, Alvarado, Texas." Court Ex. 7 at 1. S.A. Finney prepared two versions of her report of the interview. Court Exs. 3 & 7. She identified one of them as pertaining to the Alvarado robbery, Court Ex. 7, and the other as pertaining to the 183 robbery, Court Ex. 3. It is unlikely that S.A. Finney would have prepared a special version of the report identified by her as pertaining to the Alvarado robbery unless she thought the interview produced significant information about it. And, there is no reasonable reading of paragraphs 2 and 3 of the report other than that Davis

---

[9](...continued)
interview. Of course, the Alvarado Pawn Shop robbery, in which Christopher Rhodes and Defendant Clark were participants, took place about three months before that interview.

Oct. 6, 2004, Tr. at 10.

is talking about two distinct events--one matching the Alvarado robbery and the other matching the 183 robbery.[10]

Furthermore, the explanations S.A. Finney gave do not ring true.  At one point, S.A. Finney seemed to be saying that she interpreted Davis's remarks to indicate that he knew of other robberies Clark and Rhodes had committed; and, she said that Davis "specifically said that there was a convenience store robbery he believed that they had committed, but he did not know anything specifically about the Alvarado robbery . . . ."  Oct. 1, 2004, Tr. at 12.  But there is nothing in any report of any statement S.A. Finney took of Davis pertaining to any convenience store robbery or indicating that he ever said that he did not know about the Alvarado robbery.[11]  Undoubtedly, S.A. Finney knew on November 25, 2003, without further inquiry that Davis was talking about the Alvarado robbery that occurred two or three months earlier.  Otherwise, she would not have identified a version of the report of the interview as pertaining to the Alvarado robbery.  Common sense tells the court that if Davis had said that he did not know anything about the Alvarado robbery, S.A. Finney, who at that time was investigating the Alvarado robbery as well as the 183 robbery and knew that Davis had

---

[10]The probation officer read S.A. Finney's report of her November 25, 2003, interview of Davis to say that "Davis also told agents that he knew Clark had been involved in an earlier robbery several months prior to the 183 Pawn Shop robbery."  PSR at 4-5, ¶ 16.

[11]The only reports of S.A. Finney's interviews with Davis are those marked Court Exhibits 3, 7, and 15.  Tr. (draft) of Sept. 1, 2005, resentencing hearing at 10.

possession of a gun taken in the Alvarado robbery, would have said so in her report.

At another point in her testimony, S.A. Finney answered that when she interviewed Davis on November 25, he told her that Clark had committed a robbery approximately two or three months earlier. Oct. 1, 2004, Tr. at 19. Her testimony was as follows:

> Q. Then it was on November 25 you say when you interviewed Mr. Davis?
>
> A. Yes, sir.
>
> Q. And that's when he told you that Terrell Clark had committed a robbery approximately two or three months ago?
>
> A. That's correct.

Oct. 1, 2004, Tr. at 19. When asked to explain what she believed that earlier robbery to be, she gave the following garbled response:

> I believed that robbery to be the 183 Pawn Shop robbery, because he gave me the details of the planning of the robbery and said he was at the apartment when they came back from committing the robbery and talked about what they had stolen in that robbery and that included some jewelry. There was no jewelry taken in the Alvarado Pawn Shop robbery, and the details that he described about the robbery fit with the 183 Pawn Shop robbery. They did not fit with the Alvarado robbery. I believed that he was either mistaken on the amount of time that had gone by or was not telling me the truth and knew that it was actually more recently.

Id. at 19. The more detailed explanations S.A. Finney gave later in her testimony did not serve to enhance the reliability of her contention that everything Davis said on November 25, 2003, pertained to the 183 robbery. See id. at 20-23.

Furthermore, the suggestion by S.A. Finney that the planning that Davis described as having occurred two or three months before November 25, Court Ex. 3 at 1, ¶ 2, was the same robbery Davis said took place three or four weeks before that date, id. at 2, ¶ 3, is inconsistent with what S.A. Finney reported after she re-interviewed Davis on March 1, 2004.[12]  The report of the second interview indicates that Davis's decision not to participate in the 183 robbery occurred on the day of that robbery, not several weeks earlier.  Court Ex. 15 at 1-2, ¶ 2.[13]

S.A. Finney's explanations of her report of what Davis said when she interviewed him on November 25, 2003, are not the only things that have caused the court to question the reliability of S.A. Finney's assessment of the government's state of knowledge before May 2004 about Clark's involvement in the Alvarado robbery.  Another example is her report of her interview of Clark after his arrest on March 23, 2004.  By then she had identified Clark, Rhodes, and Alves as having committed the 183 robbery, and it was her belief that two of them had also committed the

---

[12]The probation officer reached the following conclusion from the reports of S.A. Finney of her two interviews with Davis and from what S.A. Finney told her:  "On November 25, 2003, and March 1, 2004, Special Agents Finney and Benavides interviewed Davis, and he reported that Terrell Clark had committed a robbery 'approximately two or three months ago' which Special Agent Finney knew was the Alvarado Pawn Shop robbery."  Supra at 15.

[13]The sentence in paragraph 2 of S.A. Finney's report of her March 1, 2004, interview with Davis that reads, "[w]hen Chris learned that Clark was not going to participate in the robbery, Shango was invited to participate," Court Ex. 14, obviously contains a clerical error, because all other information establishes that Davis, not Clark, is the one who decided not to participate in the 183 robbery.

Alvarado robbery.  Court Ex. 13 at 602-03.  In other words, by
then Clark was a prime suspect in the Alvarado robbery.  Indeed,
he was the only one of the three suspects to whom items taken in
the Alvarado robbery had been traced.[14]  And, S.A. Finney knew
that he tentatively had been identified by a victim as one of the
robbers.  Supra at 6-7.  But, the report S.A. Finney submitted on
March 31, 2004, of her post-arrest interview of Clark on March
23, 2004, does not show that she asked Clark anything about the
Alvarado robbery or why he had possession of guns taken in that
robbery.  Court Ex. 2.  Indeed, the "Title of Investigation"
shown on the report shows only the 183 robbery, id. at 1, and the
"Synopsis" says that the interview was limited to Clark's
"involvement in the armed robbery of 183 Pawn Shop, Haltom City,
Texas," id.  Not one mention of the Alvarado robbery is made in
S.A. Finney's report.[15]

The court is of the belief that S.A. Finney's report of her
March 23, 2004, interview of Clark, which was not submitted until
after Clark received legal representation at his initial
appearance on the day of the interview,[16] is not an accurate and

---

[14]Tr. (draft) of Sept. 1, 2005, resentencing hearing at 7.

[15]S.A. Finney gave the incredible explanation at the first
sentencing hearing that she asked Clark when she interviewed him on
March 23, 2004, about the Alvarado robbery, and that he denied any
knowledge of the robbery, Oct. 1, 2004, Tr. at 8, but she made no
mention of that subject in her report of the interview, Court Ex. 2.
Her explanation of why she did not do so does not make sense.  Oct.
1, 2004, Tr. at 8-10.

[16]Counsel was appointed for Clark on March 23, 2004, Order of
Mar. 23, 2004, in No. 4:04-052-MJ, which is the same day he had his
(continued...)

complete report in the sense that it fails to disclose things
that Clark told her about his involvement in the Alvarado
robbery.  The expanded record provides a plausible explanation
for the nondisclosure.

There is basis in the record for an inference that an
understanding, perhaps of the informal "wink and nod" variety,
was reached, or in the making, between Clark and an agent for the
government before or shortly after his initial appearance that
led Clark to believe that his sentence would be limited to six
years.  Tr. of Aug. 9-11, 2004, Trial, Vol. I at 203; Court Ex.
14 at 203.  Clark gave the following testimony at the August 9-
11, 2004, trial:

> Q.  . . . .
>
> After your initial appearance in this case, you
> told your mother you thought you would be getting six
> years, didn't you?
>
> A.  That's what I was told by Mr. Curtis.
>
> Q.  Okay.  And that's your attorney.
>
> A.  Yes, sir.

Tr. of Aug. 9-11, 2004, Trial, Vol. I at 203; Court Ex. 14 at
203.  Unless an understanding had been reached, or was in the
making, a sentence of six years would not be a realistic
prediction on or after March 23, 2004.  Even if the 183 robbery
offenses to which Clark confessed to S.A. Finney on March 23,

---

[16](...continued)
initial appearance and the same day he was interviewed by S.A.
Finney.

33

2004, were the only offenses taken into account, Clark would have been facing a guideline sentencing range of 141 to 155 months, with the potential of a life sentence.  If both robberies were taken into account, he would be facing a guideline sentencing range of 454 to 471 months with the potential of a life sentence.

The parties could have anticipated that the court would reject a plea agreement that would not permit the court to take into account to an appropriate degree at sentencing the offenses Clark committed in reference to both the Alvarado and 183 robberies.  <u>See</u> USSG § 6B1.2(a).  And, the parties would have known that it was unlikely that an upward departure based on the offenses Clark committed during the Alvarado robbery could be avoided unless the court were to be persuaded at the time of sentencing that it could not find based on information the government had in March 2004 that Clark was one of the robbers. While a precise explanation for S.A. Finney's puzzling conduct is not essential to the resentencing decisions, the one suggested above appears to be the most reasonable one.

E.   <u>Reason Why Alvarado Robbery Not Considered in Rhodes's Sentence</u>.

At the resentencing hearing counsel for Clark offered as an exhibit the judgment of conviction and sentence of Rhodes, Def.'s Ex. 1, to support his argument that there would be an inappropriate disparity between the sentences imposed on Clark

and Rhodes[17] if in the resentencing of Clark the court were to
take into account his Alvarado robbery offenses.  Tr. (draft) of
Sept. 1, 2005, resentencing hearing at 33-35.  Counsel's argument
fails to recognize that in the sentencing of Rhodes the court
chose not to accept as true Clark's statement and testimony that
Rhodes participated with him in the Alvarado robbery.  A fact-
finder could at least suspect, based on the record of the August
2004 trial of Rhodes, Alves, and Major, that Davis, rather than
Rhodes, was the one who joined Clark in the commission of the
Alvarado robbery, and that Clark gave false information about the
robbery to protect his friend Davis.

Obviously, the jury was not persuaded beyond a reasonable
doubt that Clark was telling the truth when he implicated Rhodes
in the Alvarado robbery.  <u>Supra</u> at 13.  By the same token, at the
sentencing of Rhodes the court was not willing to find by a
preponderance of the evidence that Rhodes was the one who joined
Clark in that robbery.  Tr. of Nov. 24, 2004, sentencing hearing
(Rhodes) at 12, 14.  On the other hand, the court has found by a

_____

[17]Rhodes was sentenced to a total imprisonment term of 192 months
(108 months each as to Counts Four and Five, to run concurrently, and
84 months as to Count Six, to run consecutively to the sentences
imposed as to Counts Four and Five).  Def.'s Ex. 1 at 2.  Because the
jury found Rhodes not guilty as to the Alvarado robbery offenses, and
the court did not find at Rhodes's sentencing hearing that Rhodes
was a participant in that robbery, the Alvarado robbery did not enter
into Rhodes's sentence.  Had he been found guilty of the Alvarado
offenses, or if the court had found from a preponderance of the
evidence at the sentencing hearing that he was guilty of those
offenses, he would have been exposed to an added term of imprisonment
of at least 300 months, the statutory minimum for a second offense of
using, carrying, and brandishing a firearm during and in the relation
to a crime of violence.

35

preponderance of the evidence known to the government pre-cooperation agreement that Clark was a participant in the Alvarado robbery.  Thus there is legitimate basis for the disparity perceived by Clark's counsel.

F.   The Sentence of Imprisonment the Court is Imposing.

The court has concluded that an aggregate sentence of imprisonment of 240 months is appropriate and necessary adequately to take into account the factors specified in 18 U.S.C. § 3553(a) to be considered in imposing a sentence.  Such a sentence is necessary to reflect the seriousness of Clark's offense conduct,[18] to promote respect for the law, and to provide just punishment for his offense conduct.  A sentence at a lower level would not be adequate to provide the desired deterrence to future criminal conduct on the part of Clark, nor would a lesser sentence be adequate to protect the public from further crimes by Clark.  Moreover, an aggregate sentence of 240 months takes into account, and gives proper weight, to the assistance Clark provided the government in the prosecution of Rhodes, Alves, and Major.  Such a sentence of imprisonment also adequately takes

---

[18]Short of commission of murders, criminal conduct more violent than the conduct of the robbers in the Alvarado and 183 robberies would be difficult to match.  The court can infer that if any of the employees or customers of the two pawn shops had resisted the demands of the robbers, or had otherwise refused to cooperate, he or she would have been seriously injured or killed.  As it is, the employees and customers undoubtedly experienced extreme emotional trauma from being threatened with death if they failed to cooperate with the robbers.  Not only were the robberies themselves extremely violent, at least two of the guns taken in the Alvarado robbery ended up in the hands of other violent criminals.  One was used in October 2003 in an aggravated assault.  PSR at 6-7, ¶ 27.  Another was used as a murder weapon in April 2004.  Id. at 7, ¶ 28.

into account the advisory guideline provisions applicable to this case.  To the extent necessary or appropriate under the current sentencing regime, as defined by the Supreme Court in Booker and the Fifth Circuit in Mares, the court also has considered, and taken into account, other provisions of the sentencing guidelines that are hereinafter discussed.

The court has considered the language of USSG § 1B1.4 that "[i]n determining . . . whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."  The Court is unaware of any legal prohibition against considering Clark's conduct related to the Alvarado robbery.  As grounds for departure, the court also has considered USSG § 5K2.21, which reads:

> The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

The word "offense" as used in § 5K2.21 is defined in USSG § 1B1.1, Application Note 1(H), to mean the offense of conviction and all relevant conduct under USSG § 1B1.3.  Clark's Alvarado robbery offense conduct is relevant conduct under Section 1B1.3 because those offenses constitute acts and omissions either committed or aided and abetted by Clark and were part of the course of conduct that included the 183 robbery.  Neither of the

37

Alvarado robbery offenses committed by Clark is being pursued in this case, and neither of those offenses entered into the determination of the applicable guideline range in this case (except to the extent of a slight increase in the offense level when guns taken in the robbery are considered as part of the USSG § 2K1(b)(1)(C) calculation--PSR at 9, ¶ 38).

Another guideline provision that bears on the sentence to be imposed on Clark is USSG § 4A1.3(a)(1).  Reliable information indicates that Clark's criminal history category substantially under-represents the seriousness of his criminal history or the likelihood that he will commit other crimes.

Moreover, a departure would be authorized under the provisions of USSG § 5K2.0 if there were no other provision in the guidelines authorizing an upward departure.  In such an event, the Sentencing Commission in formulating the guidelines would not have adequately taken into consideration the fact that Clark had, as part of the same general course of criminal conduct evidenced by his counts of conviction, engaged in other criminal conduct that Congress contemplated would result in an additional sentence of 300 months to be served consecutively to the sentences imposed as to Clark's counts of conviction.  Congress mandated that the first such offense carry a term of imprisonment of not less than seven years, to run consecutively to all other terms of imprisonment imposed, 18 U.S.C. §§ 924(c)(1)(A)(ii) and (D)(ii), and that if the defendant commits such an offense again his term of imprisonment would not be less than twenty-five

years, to run consecutively to all other terms of imprisonment,
18 U.S.C. §§ 924(c)(1)(C)(i) and (D)(ii).  If the court were not
to make a rather significant upward departure in this case, the
congressional sentencing scheme relative to the firearm offenses
committed by Clark would be frustrated.

Were the court to sentence at the top of the advisory
guideline range in this case, the sentence would be less than
one-third of what Congress contemplated for Clark's true offense
conduct.  Had Clark not provided substantial assistance, the
court would be inclined to impose a sentence, by way of an upward
departure, that would be sufficient to recognize the mandatory
384 months' imprisonment term related to the firearm offenses,
plus at least the bottom of the advisory guideline range for the
robbery offenses, for a total sentence of 454 months.  However,
the court is going to make a generous allowance for Clark's
substantial assistance by imposing sentences that aggregate only
240 months.  The court concludes that such a sentence will
properly recognize the objectives of sentencing and honor the
expectations of Congress, as well as recognize the assistance
Clark provided to the government.

Therefore, the court is ordering that Clark be committed to
the custody of the Bureau of Prisons to serve a term of
imprisonment of 87 months as to Count One of the indictment and
to serve a term of imprisonment of 153 months as to Count Two, to
run consecutively to the term of imprisonment imposed as to Count

One, for a total term of imprisonment of 240 months.

SIGNED September __8__, 2005.

_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge